[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Caryn M. Nesbitt, M.D., has filed an CT Page 11605 application for a temporary injunction against the defendant, Mary Cummings Satti, M.D., to maintain the status quo pending a full hearing on her request for a permanent injunction to enforce the terms of an employment contract between the parties. Both sides were heard during a two day hearing on the temporary injunction on September 1, and September 3, 1998.
Nesbitt claims Satti breached the contract in which she agreed (1) to give 60 days notice of her termination of the contract; and (2) not to open an office within a fifteen mile radius of the plaintiff's office for one year following the termination of the contract.
 Facts
The employment contract was for a term to begin on July 15, 1996 to December 31, 1998. Satti began work on July 15, 1996. On July 6, 1998, Satti told Nesbitt she was leaving the practice. That evening she removed all her belongings including certain lists of patients. On July 9, 1998, newspaper advertisements appeared in local newspapers. Her office is located a 8 Vista Drive in Old Lyme, a distance of 12.5 miles from Nesbitt's office within the 15 mile radius forbidden by the contract.
Satti argues that the distance by car is over 15 miles. The court rejects this argument. Case law is clear that the term "radius" in this type of contract means a straight line between two points. The contract is also clear that Satti was to give 60 days notice that she would terminate the contract. She did not give notice of one day. The court finds that terms of the contract were reasonable and that Satti breached the contract.
 Discussion
The plaintiff claims that as a result of the breach she has suffered irreparable injury and has no adequate remedy at law. Case law in this state is clear that to obtain an injunction for a breach of a contract not to compete, the plaintiff need not prove irreparable harm and no adequate remedy at law because those factors are established by the breach itself. TorringtonCreamery, Inc. v. Davenport, 126 Conn. 516, 521 (1940). Even if such a showing was required, Nesbitt had done so in her evidence demonstrating loss of reputation and good will as a result of Satti's abrupt departure. The loss of patients and the confusion of the two names, Nesbitt's Woman's Care Center and Satti's CT Page 11606 Primary Care for Woman caused further loss of patients who believed the Satti office was an extension of the Nesbitt office.
The court also finds that it is more likely than not that Nesbitt will prevail at the full hearing on the merits. The court has examined the contract and finds it to be reasonable. The court also finds that Satti breached the contract in a planned and calculating way in that she was making arrangements to open her own office as early as November, 1997 when she contracted with a medical practice business consultant to assist her in establishing her own practice.
Also, during the first half of 1998, Satti contracted with an architect and builder, selected a site, signed a lease and obtained bank financing for her own office. At no time prior to July 6, 1998 did Satti inform Nesbitt of her plans to open her own practice.
The court finds that the covenant not to compete does not unfairly or unreasonably restrict Satti from practicing medicine.
The terms of the contract were clear and not unreasonable. Sixty days notice, a promise not to practice within one year or within 15 miles from Nesbitt are by no means harsh or unfair. The terms are clear and unambiguous. The court must reject the argument that a party who freely enters a contract may breach it with impunity so long as she does so secretly and spends a lot of money in the process. Satti's expenditures were all made with the knowledge that she was in breach of this contract. Her claims of hardship were self imposed by making financial commitments to open an office within one year of terminating the contract and within the 15 mile radius. Satti claims that if she is forced to cease her practice at her present location she will lose a substantial amount of money. On the other hand, Nesbitt has proven that she also invested large amounts of money in establishing Satti in the practice at Woman's Care in reliance on Satti's commitment to comply with the terms of the contract.
 Conclusion
The court finds that Satti did not act in good faith in breaching the employment contract, in that long prior to her termination she was making arrangements to establish her own office in violation of the terms of the contract. To fail to grant the plaintiff the relief requested would be to allow the CT Page 11607 defendant to profit from her deliberate actions to breach the contract. Satti has argued that if a temporary injunction is issued, Nesbitt should post a bond in the amount of $500,000. The court disagrees that a bond in such amount is required under Connecticut General Statutes § 52-472. The statute provides that a bond need not be required when, for good cause shown, the court is of the opinion that a temporary injunction should issue without a bond. In this case, the court does not believe the amount of Satti's claims of losses if an injunction should issue. The court is of the further opinion that Nesbitt will prevail on her claim for breach of contract and permanent injunction.
The court, therefore, grants the motion for an order for a temporary injunction without bond.
As to the injunction itself, the court believes that to order Satti to close her office would cause her great harm without a proportionate benefit to Nesbitt. Accordingly, the court will issue an in junction which it believes will serve the purpose of preventing further loss of Nesbitt's patients to Satti, but cause the latter less harm than closing her office.
The court, therefore, issues an injunction as follows:
1. Dr. Satti is ordered not to advertise her practice in any newspaper, radio or television station, flyer or yellow pages of the telephone book.
2. Dr. Satti is ordered to refrain from soliciting any patient or former patient of Nesbitt's office in any manner whatsoever.
3. Dr. Satti is ordered to cease the use of the name Primary Care for Woman on any bill, letterhead or sign. Any present use is ordered to be discontinued from the date of this order.
These orders are to remain in effect until July 6, 1999, one year from the date Dr. Satti left the practice of Dr. Nesbitt.
D. Michael Hurley, Judge Trial Referee